UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EMERCHANT ADVANCE LLC, d/b/a DISCOUNT MERCHANT FUNDING,

                        Plaintiff,

     -against-

GWG MCA CAPITAL, INC.,

                        Defendant.

Case No. 2:18-cv-175

**COMPLAINT**

Plaintiff EMERCHANT ADVANCE LLC, d/b/a DISCOUNT MERCHANT FUNDING ("Plaintiff"), by its attorneys, Jaffe & Asher, LLP, for its complaint herein against defendant GWG MCA CAPITAL, INC. ("GWG" or "Defendant"), alleges as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties and the fact that the amounts in controversy exceed the sum of $75,000 exclusive of costs.

2. Venue is proper in this district under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this claim occurred, and a substantial part of property that is a subject of this action is situated, in this judicial district.

**The Parties**

3. At all relevant times, Plaintiff was and is a limited liability company organized and existing under the laws of the State of Maryland and duly authorized to conduct business within the State of New York.

4. Upon information and belief, at all relevant times, defendant GWG was and is a foreign corporation licensed to do business in the State of the State of New York and a

subsidiary of an insurance company, with a principal place of business located at 220 South Sixth Street, Suite 1200, Minneapolis, MN 55402.

## The Facts

5.      Plaintiff is engaged in the merchant cash advance business, funding cash advances to merchants in exchange for the purchase of their future accounts receivable.

6.      In or about October 2016, Plaintiff was approached by an individual Joel Nazareno ("Nazareno"), who stated that he was soliciting funding on behalf of a merchant entity known as NuLook Capital, Inc. ("NuLook"), through his own company International Professional Services Inc. d/b/a PSC ("PSC").

7.      PSC represented itself as also engaged in the business of funding cash advances to merchants, both as a direct purchaser of receivables in its own right and as a lead purchaser syndicating such purchases with other participating purchasers.

8.      Nazareno explained that NuLook's existing lender, the Defendant GWG, had declined to provide further funding to NuLook, and that NuLook was accordingly seeking alternative funding sources.

9.      Upon information and belief, the rights and obligations between NuLook and Defendant were memorialized in a Revolving Credit Agreement between NuLook and Defendant's predecessor MCA Capital, LLC ("MCA") dated May 22, 2014 (the "MCA Agreement"), as thereafter amended.

10.     Upon information and belief, under the MCA Agreement, NuLook granted Defendant a security interest in certain assets of NuLook, the scope of which was limited only to those directly related to the specific accounts receivable that Defendant funded.

11. Upon information and belief, Defendant's security interest, if any, did not extend to assets other than those accounts receivable that it funded and the general intangibles and proceeds directly pertaining thereto.

12. Therefore, upon information and belief, any transactions not funded by Defendant but funded instead by others were not subject to any lien of Defendant.

13. Upon information and belief, the MCA Agreement expressly provided that NuLook would be free to solicit other funding sources, in the event that MCA declined to or could not provide such additional funding.

14. Specifically, the MCA Agreement, upon information and belief, provided as follows:

> XVIII Commitment and Exclusivity:
>
> A. **Exclusivity with Respect to Syndications of MCAs:** The Lender will have the *exclusive right of first refusal to finance any new cash advance transaction (i) to be syndicated by Borrower* or (ii) rejected by Borrower based upon the terms of the respective FRPA; Lender will not unreasonably delay or withhold its notice of rejection of or consent thereto.
>
> B. **Exclusivity with Respect to Loan Financing to Borrower:** The Borrower agrees that it will first provide the Lender *the opportunity to finance* any additional loans under the same terms and conditions in this program. *If the Lender declines to or cannot provide such additional loans, the Borrower shall be free to solicit other lenders to finance such additional loans*. (Emphasis added).

15. In accordance with the foregoing provision of the MCA Agreement, NuLook, upon information and belief, notified MCA of its intention to seek additional funding from other sources utilizing PSC's services, and in an abundance of caution sought Defendant's advance approval thereof.

16. Upon information and belief, on or about May 28, 2015, NuLook sent an email to its contact at MCA, a Sandeep Srinath, requesting written confirmation that NuLook's entry into funding through PSC would not be a breach of the MCA Agreement.

17. Upon information and belief, Mr. Srinath replied in an email the same day, confirming that NuLook's entry into the funding through PSC would not constitute a breach of the MCA Agreement.

18. In or about February, 2016, upon information and belief, Defendant GWG purchased the assets of MCA, and has thereafter asserted all of MCA's right, title and interest in the MCA Agreement as its successor in interest.

19. Upon its succession in interest, Defendant, upon information and belief, notified NuLook that it refused to advance any further new working capital to NuLook.

20. Accordingly, in or about October 2016, PSC and NuLook approached Plaintiff as part of their efforts to seek substitute funding on NuLook's behalf.

21. On or about October 20, 2016, Plaintiff entered into a Merchant Agreement (the "Merchant Agreement") with PSC, whereby Plaintiff agreed to purchase PSC's future receivables having an agreed upon value of $240,000.00, as a means of providing the necessary funding to NuLook.

22. Also contemporaneously with the Merchant Agreement, NuLook and its principal Anthony Mannino ("Mannino") executed a Cross Collateral Addendum to the Merchant Agreement (the "Addendum"), whereby NuLook and Mannino pledged to assume any and all liability of PSC and granted cross-collateral security in NuLook's assets pursuant thereto.

23. On or about October 21, 2016, Plaintiff remitted the purchase price in the sum of $200,000 for the future receivables to PSC and NuLook as agreed.

24. Pursuant to the Merchant Agreement, upon payment of the purchase price, Plaintiff became the owner of the purchased accounts of PSC, including, *inter alia*, PSC's receivables, if any, with respect to NuLook.

25. Notwithstanding its discontinuation of new financing, Defendant, upon information and belief, exerted domination and control over the operations of NuLook, with daily monitoring and control over decisions with respect to, *inter alia*, the disposition of its revenues.

26. Defendant, fully aware in advance of the impending infusion of capital from Plaintiff due to its control over NuLook and its prior authorization with respect to alternative funding, upon information and belief, demanded that NuLook immediately divert and turn over the proceeds of Plaintiff's funding to Defendant, rather than use them as intended to fund NuLook's operations and keep it in business, threatening to "shut them down" if NuLook refused to do so.

27. Upon information and belief, NuLook acceded to Defendant's demand, turning over monies, including $173,152.00 of the funding provided by Plaintiff, to Defendant.

28. Upon information and belief, said transfer to Defendant left NuLook with insufficient capital to remain in business and rendered it insolvent.

29. Upon information and belief, as part of its control over virtually all aspects of NuLook's business operations, banking and cash flow, Defendant had access at all relevant times to NuLook's operating account pursuant to the terms of the MCA Agreement between Defendant and NuLook, as well as the ability to monitor all transactions on a software platform utilized by PSC as NuLook's servicing agent.

30. As such, all factoring loan proceeds received by NuLook and other sources of working capital including Plaintiff's funding went through NuLook's bank account and were clearly visible to Defendant on a daily basis from its own computer terminals.

31. Upon information and belief, Defendant knew or should have known that the

$173,152.00 it caused to be withdrawn from NuLook's account and diverted to it were the monies funded by Plaintiff and were not ordinary course proceeds of collections of receivables, let alone those from the specific merchant-clients it funded to which its limited security interest could attach.

32. Defendant's foregoing conduct caused NuLook to default in its obligations to repay Plaintiff.

33. On or about April 4, 2017, NuLook filed for protection under Chapter 11 of the Bankruptcy Code in the Eastern District of New York (Case No. 8-17-72013), resulting in an automatic stay vis-à-vis that entity.

34. Upon information and belief, PSC is currently in receivership arising out of litigation commenced by Defendant and pending in United States District Court, Eastern District of New York, encaptioned *GWG MCA Capital, Inc. v. NuLook Capital, LLC*, *et al*., Civil Action No. 17-cv-1724.

35. By Order dated September 20, 2017, NuLook's Chapter 11 case was voluntarily dismissed, only after what little of its assets remained had been depleted in the interim.

36. As a result of the foregoing, Defendant, notwithstanding its express approval of the substitute financing provided by Plaintiff, wrongfully converted the proceeds of Plaintiff's funding to its own use and prevented PSC and NuLook from fulfilling their obligations to Plaintiff, by precluding repayment through continued operations.

37. There remains a balance due and owing to Plaintiff in the amount of $173,152.00, together with interest thereon.

## AS AND FOR A FIRST CLAIM FOR RELIEF
**(Tortious Interference with Contract)**

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this complaint as though fully set forth at length herein.

39. Upon information and belief, at all relevant times, Defendant knew of the existence of the Merchant Agreement, and Plaintiff's rights in and reliance thereon and funding made to NuLook pursuant thereto.

40. Upon information and belief, Defendant did wrongfully induce the breach of the Merchant Agreement by virtue of the wrongful conduct as more particularly described in paragraphs 5 through 37 of this complaint.

41. Upon information and belief, Defendant knew that compelling diversion of the monies paid by Plaintiff to NuLook pursuant to the Merchant Agreement to itself, and otherwise preventing Plaintiff from receiving the proceeds of the receivables purchased by them for use as working capital, would cause NuLook to breach the Merchant Agreement and otherwise render performance impossible.

42. As a direct and proximate result of the aforesaid tortious interference, Plaintiff was precluded from recovering its expectancy under the Merchant Agreement in the sum of $240,000.00.

43. Upon information and belief, the wrongful acts of Defendant as aforesaid were willful, deliberate and malicious, thus entitling Plaintiff to an award of punitive damages.

44. By reason of the foregoing, Plaintiff is entitled to judgment against the Defendant for tortious interference in the sum of $240,000.00, together with interest thereon, and punitive damages in an amount to be determined by the Court.

## AS AND FOR A SECOND CLAIM FOR RELIEF
(Wrongful Foreclosure upon Property Not Subject to Defendant's Lien)

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 of this complaint as though fully set forth at length herein.

46. Defendant knew or should have known that Plaintiff and other substitute funders were relying on its approval of substitute funding of NuLook's business in order for Plaintiff and others to agree to fund NuLook.

47. Plaintiff reasonably relied on Defendant's approval in entering onto the Merchant Agreement and advancing the sums to NuLook pursuant thereto.

48. Upon information and belief, Defendant had access to NuLook's bank account and the ability, on a daily basis, to track all funds flowing into and out of the account and the nature thereof, whether derived from individual receivables constituting its collateral or proceeds received by NuLook from alternative sources of working capital.

49. Notwithstanding said knowledge, on or about October 21, 2016, Defendant wrongfully caused funds provided by Plaintiff to NuLook in the sum of $173,152.00 to be misappropriated and diverted to itself.

50. Defendant had no colorable right to said funds, which were not subject to Defendant's security interest but instead constituted substitute funding of working capital advanced by Plaintiff and previously authorized by Defendant.

51. Defendant knew that said funds were outside the scope of its security interest.

52. Plaintiff would not have entered into the Merchant Agreement with PSC and NuLook and advanced funds pursuant thereto, had it known that Defendant would immediately compel wrongful foreclosure thereupon, effectively putting NuLook out of business and defeating the purpose of advancing working capital to NuLook.

53. By reason of the foregoing, Plaintiff has suffered damages in the amount of $173,152.00, together with interest thereon.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Conversion)

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53 of this complaint as though fully set forth at length herein.

55. The funds provided by Plaintiff to NuLook were specifically solicited by NuLook, and earmarked by Plaintiff, for use as working capital for NuLook to generate revenue.

56. Plaintiff possessed a superior right of possession of the funds over the Defendant.

57. Plaintiff has an immediate and superior possessory right and interest in and to the proceeds of all receivables that it purchased from PSC and NuLook under the Merchant Agreement.

58. Upon information and belief, any security interest that Defendant may have in receivables of NuLook is confined only to those future receivables purchase agreements and merchant cash advance agreements that Defendant directly funded, not to those funded by other parties, such as Plaintiff.

59. The Defendant interfered with Plaintiff's rights in the funds and receivables purchased thereby, by virtue of its converting the same to its own use and benefit, instead of allowing the funds to be used for their intended purpose, as alleged above.

60. Defendant is knowingly and intentionally exercising unlawful dominion and control over the aforesaid monies, and continues to do so as of the date hereof.

61. Despite due demand, Defendant has failed and refused to return the aforesaid monies to Plaintiff.

62. The aforesaid acts of Defendant constitute unlawful conversion.

63. As a direct and proximate result of the foregoing, Plaintiff has sustained damages in the sum of $173,152.00, plus interest thereon.

64. Defendant's conversion of the aforesaid monies was willful, wanton, and morally reprehensible, thus entitling Plaintiff to an award of punitive damages.

65. By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in the sum of $173,152.00, together with interest thereon, and punitive damages in an amount to be determined by the Court.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
**(Fraudulent Conveyance under NY Debtor & Creditor Law §276)**

66. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 65 of this complaint as though fully set forth at length herein.

67. At the time of the aforesaid diversion of funds, NuLook was insolvent or became insolvent as a result of said transfer.

68. Upon information and belief, Defendant's diversion and transfer of the funds for its own benefit in derogation of Plaintiff's rights was made with actual intent to injure or defraud Plaintiff and other creditors of NuLook and with wanton disregard of the damage that would be caused thereto.

69. By reason of the foregoing, said transfer is voidable pursuant to N.Y. Debtor and Creditor Law §276, and judgment should be entered against the Defendant for return of the funds to Plaintiff, together with an award of attorneys' fees pursuant to N.Y. Debtor and Creditor Law §276-a in connection with the prosecution of this action, in an amount to be determined by the Court.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
**(Unjust Enrichment)**

70. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 69 of this complaint as though fully set forth at length herein.

71. Plaintiff has bestowed a benefit upon Defendant by advancing funds intended for NuLook that Defendant wrongfully diverted for its own use.

72. Defendant has been unjustly enriched in that it has caused Plaintiff's infusion of cash to NuLook, in the form of payment of the purchase price for future receivables, to be diverted to its own use.

73. Defendant had no colorable right to said funds, which were not subject to Defendant's security interest but instead constituted substitute funding of working capital that it had induced Plaintiff to believe that it was advancing to NuLook in the ordinary course of NuLook's business.

74. It would be unjust and inequitable for Defendant to retain the aforesaid benefit without making restitution to Plaintiff therefor.

75. By reason of the foregoing, Plaintiff is entitled to judgment against the Defendant for unjust enrichment in the amount to be determined by the court, together with interest thereon.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
(Constructive Trust)

76. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 75 of this complaint as though fully set forth at length herein.

77. As set forth above, Defendant used its insider access and control over NuLook's business and finances to misappropriate Plaintiff's funding, stripping away NuLook's working capital and ability to generate revenue to stay in business to repay the Plaintiff.

78. Defendant used its domination and power over NuLook to confer unfair advantage upon itself and render NuLook insolvent to the Plaintiff's detriment.

79. Defendant has been unjustly enriched by its wrongful diversion of funds in which

it had no right, title or interest, and which were earmarked and intended for working capital for NuLook.

80. Defendant's conduct and wrongful acts as aforesaid were in bad faith.

81. Under these circumstances, the Defendant is holding property that in equity and good conscience.it should not retain.

82. Plaintiff has no adequate remedy at law.

83. By reason of the foregoing, Plaintiff is entitled to judgment against the Defendant requiring that the funds paid by Plaintiff and diverted by Defendant be held in constructive trust for the benefit of Plaintiff and paid to Plaintiff.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
(Accounting)

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 83 of this complaint as though fully set forth at length herein.

85. Plaintiff has been damaged by Defendant's failure to account for the funds that NuLook received from Plaintiff, which funds Defendant caused to be wrongfully diverted to its own use and benefit.

86. Plaintiff has no adequate remedy at law.

87. By reason of the foregoing, Plaintiff is entitled to an accounting and judgment directing Defendant to disgorge any sums collected in derogation of Plaintiff's rights therein.

**WHEREFORE**, plaintiff EMERCHANT ADVANCE LLC, d/b/a DISCOUNT MERCHANT FUNDING, requests judgment against defendant GWG MCA CAPITAL, INC., as follows:

(i) on the first claim for relief of the complaint, judgment against Defendant in the amount of $240,000.00, plus interest and costs, and punitive damages in an amount to

be determined by the Court;

(ii) on the second claim for relief of the complaint, judgment against Defendant in the amount of $173,152.00, plus interest and costs;

(iii) on the third claim for relief of the complaint, judgment against Defendant in the amount of $173,152.00, plus interest and costs, and punitive damages in an amount to be determined by the Court;

(iv) on the fourth claim for relief of the complaint, judgment (i) setting aside as fraudulent the conveyance of Plaintiff's funds to Defendant, and (ii) judgment against Defendant in the amount of $173,152.00, plus interest and costs, together with reasonable attorneys' fees pursuant to N.Y. Debtor and Creditor Law § 276-a;

(v) on the fifth claim for relief of the complaint, judgment against Defendant in an amount to be determined by the court but believed to be not less than $173,152.00, plus interest and costs;

(vi) on the sixth claim for relief of the complaint, imposition of a constructive trust in favor of Plaintiff to the extent of all funds advanced by Plaintiff and diverted by Defendant, and an Order directing Defendant to disgorge all sums collected in derogation of Plaintiff's rights pursuant thereto;

(vii) on the seventh claim for relief of the complaint, for an accounting; and

(viii) for such other and further relief as this Court deems just and proper.

Dated: White Plains, New York
       January 10, 2018

                                                    **JAFFE & ASHER LLP**

                                            By:    _/s/ Glenn P. Berger____
                                                   Glenn P. Berger, Esq.
                                                   445 Hamilton Avenue, Suite 405
                                                   White Plains, New York 10601

(212) 687-3000
*Attorneys for Plaintiff*